## LEAVENWORTH v. BANK OF GILLETT et al.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1921.)

No. 5783.

1. **Evidence ⊚⇒245—Sheriff's advertisement held competent as admission against attaching creditor.**

In an action against a sheriff and creditor for attaching logs, in which plaintiff claimed that he attached but 500,000 feet of logs, the sheriff's notice of sale of some 900,000 feet was competent evidence against defendants in the nature of an admission against interest as to amount.

2. **Sheriffs and constables ⊚⇒171—Evidence as to attachment of plaintiff's property held for the jury.**

In an action against an attaching creditor and a sheriff on the ground that they had attached plaintiff's logs as those of another, evidence as to the amount of logs attached, and as to whether they belonged to the plaintiff or to the creditor, held for the jury.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by George Leavenworth against the Bank of Gillett and others. From judgment for defendant, plaintiff brings error. Reversed and remanded.

J. B. Daggett and C. E. Daggett, both of Marianna, Ark., and Thomas S. Buzbee, George B. Pugh, and H. T. Harrison, all of Little Rock, Ark., for plaintiff in error.

Charles T. Coleman, Joe T. Robinson, Joe W. House, Jr., and Walter G. Riddick, all of Little Rock, Ark., for defendants in error.

Before SANBORN and STONE, Circuit Judges.

SANBORN, Circuit Judge. George Leavenworth, the plaintiff in error, sued the Bank of Gillett, R. H. Elliott, the sheriff of Arkansas City, and the sureties on his bond for $15,000 damages because, as he alleged, the sheriff, under an attachment caused to be issued by the bank in a suit to which the plaintiff was not a party, seized and took from his possession 1,180,679 feet of his logs which he had caused to be cut from his land, described as private survey No. 2400 in Arkansas county, and banked on the river to be floated to the mills. By their answer the defendants admitted that the plaintiff was the owner of private survey No. 2400, but denied that the logs which they seized came from that survey, or that the plaintiff was the owner of the logs that they seized, or that the logs were worth $15,000, or any other sum, and alleged that the only logs they seized were logs from timber cut from lands belonging to the Bank of Gillett. The issues thus made were tried by a jury, which returned a verdict for the defendants.

The plaintiff assigns several alleged errors which it is unnecessary to consider. One which demands consideration is that the court below held during the trial of the case and charged the jury that the sheriff seized only 502,000 feet of logs under the attachment. There was substantial conflicting testimony as to the amount seized by the sheriff and

as to the disposition he made of the logs he seized. Witnesses for the defendants testified, it is true, that he seized only 502,000 feet. But Angel, a witness for the plaintiff, testified that he cut the logs on plaintiff's private survey No. 2400 and scaled them; that there were more than a million feet of them. J. D. Asher, one of the witnesses for the plaintiff, testified that he was the man referred to by Angel who had charge of the cutting and hauling of the logs. During his cross-examination by counsel for the defendants he testified as follows:

"The Court:

"Q. How many were attached? A. The whole thing.

"Q. The whole million? A. Yes, sir; so I understand.

"Mr. Coleman:

"Q. Do you know? A. They had them advertised for sale.

"The Court:

"Q. By the sheriff? A. Yes, sir.

"Q. How does it come they recovered 600 and some odd thousand feet? A. That was the next year.

"Q. I mean, were they sold by the sheriff? A. No, sir; wouldn't nobody bid on the gum and stuff there not down.

"Q. You say it wasn't sold? A. All of it wasn't sold.

"Q. It was abandoned and Mr. Kimble took charge of it again? A. Yes, sir; we went there next year and put out six hundred and eleven thousand or ten thousand feet and hauled it out and delivered it.

"Mr. Coleman:

"Q. Another question. These logs were hauled there for the purpose of floating them down to market? A. How is that?

"Q. These logs were hauled there for the purpose of floating them down to market? A. Yes, sir; sure.

"Q. Now, did you have any water between June, 1917, and April 1919, when you could have floated these logs? A. Did we have any water? We had water in April.

"Q. April what year? A. Of 1918.

"Q. Sufficient water to float these logs? A. Yes, sir.

"Q. Were you there at that time? A. No, sir; I wasn't there at that time.

"Q. Oh, well, you don't know anything about it? A. Yes, sir; I know.

"The Court:

"Q. You knew there was high water? A. Yes, sir; I knew there was high water at the time it was up there, but I weren't there."

[1, 2] The deputy sheriff who made the attachment and conducted the sale testified that he attached only 502,000 feet of logs. But he also testified that he made a sale of a part of these logs prior to his sale of June, 1918, and the advertisement of the sale in June which was in evidence described 903,450 feet. While this notice bears the signature "R. H. Elliott, Receiver," there was substantial evidence that Elliott was the sheriff, and that the sale was made under the attachment pursuant to an order of the court to scale and sell the attached logs after the attachment was made. In this state of the evidence the advertisement was competent and persuasive evidence against the defendants in the nature of an admission against interest as to the amount of logs the sheriff attached and attempted to sell. There was also substantial evidence that the 611,000 feet of logs which the plaintiff subsequently recovered were held under the attachment and advertised for sale but were not sold for want of bidders, and that the sheriff's detention of these logs under the attachment resulted in a loss to the

plaintiff of many thousands of dollars. In the state of evidence disclosed by the record at the time this case went to the jury the plaintiff was entitled therefore to the submission to the jury of the questions of fact: What was the amount of logs of the plaintiff attached by the sheriff so that the plaintiff was excluded from the possession or from the free use and disposition thereof? How long was he so excluded and what damages did he suffer thereby? What amount of his logs did the sheriff or receiver sell under the attachment, and what amount of damages did he suffer from this sale and conversion if any? There was such a substantial conflict in the evidence on material issues of facts that were not submitted to the jury in this case that the plaintiff is entitled to another trial. The judgment is accordingly reversed, and the case remanded to the court below for that purpose.